IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY WERTZ, PATRICK HUGHEY,<br><br>Plaintiffs,<br><br>v.<br><br>INMATE CALLING SOLUTIONS, LLC,<br>JEFFREY FEWELL, CHRIS CAIN,<br>DAVID CODDINGTON, WASHINGTON<br>COUNTY PENNSYLVANIA,<br><br>Defendants. | 2:23-CV-01045-CCW |

**OPINION**

Before the Court are two Motions to Dismiss filed by the various defendants in the case. For the reasons set forth below, the Court will grant in part and deny in part Inmate Calling Solutions' Motion and grant the remaining Defendants' Motion.

**I.      Background**

This case arises from a dispute involving the recording and dissemination of phone calls between Plaintiff Jeffrey Wertz, an attorney, and his client Patrick Hughey, a former inmate at the Washington County Correctional Facility.  ECF No. 1.  Plaintiffs bring claims against five defendants, including Inmate Calling Solutions, a company that provides telephone services to the individuals incarcerated at the Correctional Facility;  Mr. Jeffrey Fewell, the Warden of the Correctional Facility;  Chris Cain, the Deputy Warden of the Correctional Facility;  David Coddington, a Major at the Correctional Facility;  and Washington County, the municipality where

1

the Correctional Facility is located.[1]  ECF No. 1 ¶¶ 3–7.  Plaintiffs' Complaint asserts:  a violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511, 2520 (Count I – against Inmate Calling Solutions only);  claims under 42 U.S.C. §1983 for violation of First and Fourth Amendment rights (Counts II and III – against Inmate Calling Solutions only);  a  failure to intervene under § 1983 (Count IV – against Individual Defendants only), and a *Monell* claim under § 1983 (Count V—against Washington County only).[2][3]  ECF No. 1.  All Defendants have moved to dismiss the claims against them.  ECF Nos. 10, 20.

The relevant factual allegations, taken as true, are as follows.

ICS provides telephone services on behalf of Washington County to persons incarcerated at the Correctional Facility.  ECF No. 1 ¶ 10.  To use ICS' services, and make calls to inmates, individuals must set up a pre-paid collect account with ICS.  ECF No. 1 ¶ 12.  ICS does not offer a separate account for attorneys to use to communicate with their clients.  ECF No. 1 ¶ 13.  Despite not having separate accounts, ICS and Washington County represent that phone conversations between attorneys and their incarcerated clients are not recorded.  ECF No. 1 ¶ 14.

With these assurances, on May 19, 2021, Mr. Wertz, an attorney, created a pre-paid collect account with ICS.  ECF No. 1 ¶ 17.  On June 7, 2021, Mr. Wertz followed ICS' purported process to have his phone number marked confidential to prevent the recording and monitoring of his phone calls with clients.  ECF No. 1 ¶ 18.  As part of ICS' process to mark phone numbers confidential, Mr. Wertz provided his Pennsylvania Bar credentials and driver's license to Mr. Fewell, the Warden.  ECF No. 1 ¶ 19.  Mr. Fewell subsequently informed Mr. Wertz that his

---

[1] Plaintiffs sue Messrs. Fewell, Cain, and Coddington in their individual capacities.  ECF No. 1.
[2] Plaintiffs bring Counts I, II, and III on behalf of themselves and two proposed classes of attorneys and their incarcerated clients.
[3] This Court has federal question jurisdiction over all of the claims under 28 U.S.C. § 1331.

account was approved and forwarded the information to Deputy Warden Cain and Major Coddington. ECF No. 1 ¶ 20.

On June 14, 2021, Mr. Wertz began receiving calls from inmates, including Mr. Hughey, all using ICS' telephone services. ECF No. 1 ¶ 21. Mr. Wertz and the inmates with whom he spoke all believed that their conversations were not being recorded or monitored. ECF No. 1 ¶ 21. Defendants were, however, monitoring and recording these conversations. ECF No. 1 ¶ 22. On January 18, 2022, the Washington County District Attorney was provided with recordings of privileged calls between Mr. Wertz and his incarcerated clients. ECF No. 1 ¶ 23. On March 11, 2022, the District Attorney then produced 63 of these privileged calls to Mr. Wertz himself as part of pre-trial discovery. ECF No. 1 ¶ 24. In June 2022, Mr. Wertz asked ICS for metadata and additional information regarding the recording and dissemination of his attorney-client phone calls with inmates in the Correctional Facility. ECF No. 1 ¶ 26. ICS confirmed that it possessed that information but stated that it considered Washington County to be the owner of the data, and therefore, it did not control whether to release it. ECF No. 1 ¶ 26. Washington County instructed ICS to not provide Mr. Wertz with any of the requested information. ECF No. 1 ¶ 27.

## II.     Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough

to raise a right to relief above the speculative level," *id.*, and be "sufficient . . . to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). That said, under Rule 8's notice pleading standard, even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff need only "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connolly v. Lane Constr. Corp.*, 809 F.3d 780, 788–89 (3d Cir. 2016) (finding that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss").

**III.    Legal Analysis**

The Court will first address whether Mr. Wertz has standing to bring claims on behalf of himself and the proposed attorney class members. Finding that Mr. Wertz does have standing, the Court will then turn to ICS' Motion to Dismiss Counts I, II, and III. And finally, the Court will

4

address the Motion to Dismiss Counts IV and V by Washington County and Messrs. Fewell, Cain, and Coddington.

### A. Mr. Wertz has Standing to Bring His Claims

In both Motions to Dismiss, Defendants allege that Mr. Wertz's claims in Counts I through III are based on a violation of the attorney-client privilege, and because that privilege belongs to the client—not the attorney—Mr. Wertz does not have standing to bring those claims. ECF Nos. 11 at 5–7; 21 at 8–10. In response, Mr. Wertz contends that his claims are not "based on" the attorney-client privilege; instead, he alleges that his claims are based on a violation of his "reasonable expectation of privacy" under the Fourth Amendment. ECF Nos. 12 at 3–6; 22 at 5–7. He argues that he reasonably expected his attorney-client phone calls with inmates to be private because of the attorney-client privilege. *Id.* We agree with Plaintiffs that Mr. Wertz has standing.

#### 1. Legal Standard

The standing doctrine, in Article III, section 2 of the Constitution, limits the judicial power of the United States to "Cases" and "Controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). Thus, federal courts may "resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quoting *Am. Legion v. Am. Humanist Assn.*, 139 S. Ct. 2067, 2103 (2019)). A "real controversy" exists where the plaintiff (1) has suffered an "injury in fact," (2) that is "fairly traceable" to the defendant's challenged conduct, and (3) is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). If any of these elements is missing, then there is no case or controversy, and the court lacks jurisdiction over the matter. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–62 (1992). A plaintiff must demonstrate standing for each claim and form of relief asserted. *Assoc. Builders & Contractors Western Pa. v. Cmty. Coll. of Allegheny*, 81 F.4th 279, 287 (3d Cir. 2023).

The party invoking the court's jurisdiction bears the burden of establishing standing. *Spokeo*, 578 U.S. at 338. When a party challenges standing on the basis of the pleadings, courts "accept as true all material allegations in the complaint" and "construe the complaint in favor of the complaining party." *Yaw v. Del. River Basin Comm'n*, 49 F.4th 302, 310 (3d Cir. 2022).

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Assoc. Builders*, 81 F.4th at 287. A plaintiff must show that the asserted harm is closely related to a "harm traditionally recognized as providing a basis for a lawsuit in American Courts." *TransUnion*, 594 U.S. at 417. These harms can include "physical and monetary harms, as well as '[v]arious intangible harms' such as reputational harms, disclosure of private information, intrusion upon seclusion, and. . . 'harms specified by the Constitution itself.'" *Assoc. Builders*, 81 F.4th at 288 (citing *TransUnion*, 594 U.S. at 425).

### 2. Mr. Wertz Has Standing to Bring his Claims

Here, the Court finds that Mr. Wertz has Article III standing because he has sufficiently alleged an injury-in-fact. Mr. Wertz asserts that he was injured when Defendants violated his reasonable expectation of privacy by monitoring, recording, and disseminating his private phone calls with his clients. ECF No. 1. Such harm bears a close relationship to the traditional harm of disclosure of private information. *See Assoc. Builders*, 81 F.4th at 288. Mr. Wertz has also alleged that the harm—the recording and disseminating of the calls—is traceable to ICS' conduct, *see* ECF No. 1 ¶¶ 14–29, and redressable by this Court, ECF No. 1 ¶ 57a.–j. (seeking injunctive relief and monetary damages).

Furthermore, the Court disagrees with Defendants that because Mr. Wertz is not the holder of the attorney-client privilege, he cannot assert a § 1983 claim for Fourth Amendment violations.[4] An individual has capacity to assert a Fourth Amendment claim where that person "has a legitimate expectation of privacy in the invaded place." *United States v. Montalvo-Flores*, 81 F.4th 339, 342 (3d Cir. 2023) (citing *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).  A person has a legitimate expectation of privacy where she has both a subjective and objective expectation of privacy. *Montalvo-Flores*, 81 F.4th at 342.  The subjective prong is satisfied where the person had an actual or subjective expectation of privacy, and the objective prong is met where the expectation of privacy is "one that society is prepared to recognize as 'reasonable.'" *Montalvo-Flores*, 81 F.4th at 342 (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)).  Here, Mr. Wertz has asserted that he subjectively believed that his attorney-client phone calls were private because ICS represented that it does not record such phone calls. ECF No. 1 ¶¶ 14, 21.  Further, Mr. Wertz had an objective expectation of privacy because society recognizes the confidentiality of attorney-client communications—even in the context of prison. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."); *In re Grand Jury Subpoena*, 745 F.3d 681, 687 (3d Cir. 2014) ("[This] privilege protects from disclosure of confidential communications."); *Whitenight v. Elbel*, No. 16-00552, 2017 WL 8941221, at *8 (W.D. Pa. April 10, 2017) (Eddy, J.) (explaining that attorney phone calls to incarcerated clients maintain an expectation of privacy).

---

[4] In their Motions to Dismiss, Defendants' challenge to Mr. Wertz's standing implicates the Fourth Amendment standing inquiry.  The Third Circuit has recognized that such an inquiry is related to "whether a litigant's Fourth Amendment rights have been implicated" and should not be confused with Article III standing.  *United States v. Mosley*, 454 F.3d 249, 253 n.5 (3d Cir. 2006).  Because Defendants' arguments appear to implicate both Article III standing and the Fourth Amendment standing inquiry, the Court will address both here—although it notes they are distinct inquiries.

Therefore, the Court finds that Mr. Wertz has alleged sufficient facts showing that he has capacity to state a § 1983 claim for violations of Fourth Amendment rights.

Accordingly, Defendants' Motions to Dismiss will be DENIED to the extent they seek to dismiss Mr. Wertz's claims due to lack of standing.

    **B.**    **ICS' Motion to Dismiss (ECF No. 20) Will be Granted in Part and Denied in Part**

In its Motion, ICS seeks to dismiss Counts I, II, and III of Plaintiffs' Complaint. ECF No. 20. In their Complaint, Plaintiffs allege that ICS illegally intercepted privileged attorney-client communications in violation of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2511, 2520 (Count I). ECF No. 1 ¶¶ 37–42. Additionally, Plaintiffs contend that when ICS recorded and disseminated the attorney-client phone calls, it intentionally interfered with their First Amendment (Count II) and Fourth Amendment (Count III) rights, in violation of 42 U.S.C. § 1983. ECF No. 1 ¶¶ 43–50. The Court will address each count in turn below.

    **1.**    **Plaintiffs have Stated a Claim for Illegal Interception Under 18 U.S.C. §§ 2511, 2520 (Count I)**

The Electronic Communications Privacy Act, also known as the Federal Wiretap Act makes it unlawful for anyone to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. §§ 2511(1)(a), 2520. An exception to § 2511's prohibition on the interception of communications exists where (1) an investigative law enforcement officer intercepts communications in the ordinary course of his duties, and (2) one of the parties has given prior consent. 18 U.S.C. § 2511(2)(c); *United States v. Morris*, No. 07-20, 2008 WL 5188826, at *19–20 (W.D. Pa. Dec. 8, 2008) (Gibson, J.) (finding an exception to the Wiretap Act where the jail monitored inmate calls to the public to ensure prison security and where the inmates received at

8

least four notices prior to their calls that they would be recorded). "Generally, where inmates have notice that their telephone calls are being monitored and recorded there is no violation of the Wiretap Act." *Elbel*, 2017 WL 8941221, at *9. Phone calls between inmates and their attorneys, however, require different considerations, and interception of those calls can establish a plausible claim under the Federal Wiretap Act. *Id.* at 10 (finding plaintiff pleaded a plausible Wiretap Act claim where he alleged that the jail warden recorded privileged calls between him and his attorney). Here, ICS argues that Plaintiffs have failed to state a claim that ICS illegally intercepted communications because they "have included no allegations whatsoever concerning what ICS did or failed to do." ECF No. 21 at 5–8. ICS further contends that the recording of prisoner communications is allowed because it furthers security interests and inmates have lowered expectations of privacy in prison. ECF No. 21 at 5–6. In response, Plaintiffs allege that ICS was involved in the illegal recording because it set up a system that recorded privileged calls despite representing to attorneys that it would not do so. ECF No. 22 at 3–4. Further, Plaintiffs maintain that although prisoners have a lowered expectation of privacy, they still have a reasonable expectation of privacy in communications to their attorneys. ECF No. 22 at 4.

The Court finds that Plaintiffs have alleged sufficient facts to support a claim that ICS illegally intercepted private phone calls between Plaintiffs. They contend that ICS represented that it records regular inmate communications but screens out privileged calls between inmates and their attorneys. ECF No. 1 ¶ 14. Mr. Wertz alleges that he followed ICS' process to have his phone number and telephone account marked confidential so as not to be recorded. ECF No. 1 ¶¶ 18–20. Despite his efforts, he maintains that privileged phone calls between him and Mr. Hughey were still recorded and then disseminated to law enforcement, constituting an illegal interception. ECF No. 1 ¶¶ 18–20, 22. ICS' contention that the recording here was proper because

9

inmates have a lowered expectation of privacy is inapplicable. First, while inmates may have less privacy in their communications with non-attorneys, they retain a reasonable expectation of privacy in their privileged communications to their attorneys. *See Elbel*, 2017 WL 8941221, at *8. Further, the facts alleged in the Complaint indicate that Plaintiffs did not give their prior consent to have the conversations recorded and took steps to prevent any such recording. *See* ECF No. 1 ¶ 18. Therefore, at this stage of the case, the Court finds that Plaintiffs have sufficiently stated a claim under the Federal Wiretap Act.

Accordingly, ICS' Motion to Dismiss will be DENIED as to Count I of the Complaint.

### 2. Plaintiffs have not Stated a Claim for First and Fourth Amendment Interference pursuant to 42 U.S.C. § 1983 (Counts II and III)

Section 1983 establishes a statutory cause of action to vindicate constitutional violations. 42 U.S.C. § 1983. To state a claim under § 1983, plaintiffs must plead that they were "deprived of a federal constitutional or statutory right by a state actor." *Coulter v. Coulter*, No. 23-2222, 2024 WL 163081, at *1 (3d Cir. Jan. 16, 2024); *see Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting 42 U.S.C. § 1983). Thus, courts consider whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). Further, courts must also address the state actor element, which requires an individual to "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey*, 635 F.3d at 609 (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).

To distinguish between private and state actors, "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private

behavior may be fairly treated as that of the State itself." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). In the Third Circuit, an entity is a state actor if it meets the requirements under any one of the following three tests: (1) the Public Functions Test, (2) the State Compulsion Test, and (3) the Joint Action or Close Nexus Test. *See id.* The Public Functions Test looks at "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state." *Id.* The State Compulsion Test analyzes "whether the private party has acted with the help of or in concert with state officials." *Id.* The Joint Action or Close Nexus Test assesses whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.*

Here, ICS asserts that Plaintiffs have failed to state a claim for interference with their First and Fourth Amendment rights because they have not alleged specific facts showing ICS' involvement in the recordings. ECF No. 21 at 5–8. In response, Plaintiffs contend that they have asserted sufficient facts to state a claim. ECF No. 22 at 3–5; ECF No. 1 ¶¶ 14–29. They further contend that ICS is a state actor using any of the three tests because Washington County directed ICS to provide telephone services to inmates, significantly encouraged ICS' activity, and participated in ICS' provision of services. ECF No. 1 ¶ 44. ICS does not respond directly to its status as a state actor or private entity. ECF No. 21. The Court, however, finds that Plaintiffs' Complaint fails to allege that ICS is a state actor under any of the three tests.[5]

Turning first to the Public Functions Test, Plaintiffs have failed to show that ICS, in providing telephone services to inmates, is engaged in acts that are "traditionally the exclusive prerogative of the state." *Kach*, 589 F.3d at 646–47 ("Acts of [] private contractors do not become

---

[5] The Third Circuit has not applied these tests in a case with facts similar to those here, but the Court finds persuasive district court decisions finding that, generally, private telephone companies providing telephone services to inmates are not state actors.

11

acts of the government by reason of their significant or even total engagement in performing public contracts.") The "mere fact that [ICS] provides telephone services to prisoners pursuant to a contract with [Defendants], alone, is insufficient to transform [ICS] into a state actor." *Williams v. Securus Correctional Billing*, No. 14-42, 2014 WL 7338715, at *5 (W.D. Pa. Dec. 22, 2014) (Baxter, then M.J., now J.) (finding prison telephone provider did not act under color of state law); *McNeil v. Global Tel-Link*, No. 3:15-cv-01243, 2017 WL 5248377, at *1 (M.D. Pa. Nov. 13, 2017) (same).

Turning next to the State Compulsion Test, Plaintiffs have failed to allege facts showing that ICS "acts pursuant to the 'coercive power' of the state or is 'controlled' by the state." *Anderson v. Sposato*, No. 11-cv-5663, 2013 WL 2023229, at *2–3 (E.D.N.Y. May 9, 2013) (finding that prison telephone provider is not a state actor, in part, because plaintiffs did not allege that the State "participated in, coerced, or significantly encouraged" the telephone provider's acts); *Whitaker v. Director, TDCJ-CID*, No. 9:11-cv-68, 2013 WL 2318889, at *14 (E.D. Tex. May 27, 2013) (finding prison telephone provider was not a state actor where plaintiff failed to show that state law or custom controlled the provider). Here, Plaintiffs have failed to point to a state law, custom, or policy that required or coerced ICS into recording attorney-client phone calls.

Finally, turning to the Joint Action or Close Nexus Test, Plaintiffs have failed to allege that "there is a sufficiently close nexus between the state and the *challenged* action of [ICS] so that the action may be fairly treated as that of the State itself." *Kach*, 589 F.3d at 648; *Iswed v. Caruso*, No. 1:08-cv-1118, 2009 WL 4251076, at *3 (W.D. Mich. Nov. 24, 2009) (finding that prison telephone provider was not a state actor where plaintiff made no allegations that the provider and the state were jointly involved in developing the telephone access policies or that they "otherwise willfully participated in joint activity."). Courts have found several actions to be an insufficient

nexus, including receiving extensive government funding or an economic benefit, mere cooperation between the two entities, regular partnership in public service activities, extensive state regulation of the entity, and a contractual relationship even where the contract lists "an extensive and detailed" set of requirements. *Burke v. Ohio Dep't of Rehabilitation and Correction*, No. 2:21-cv-48, 2022 WL 93326, at *3 (S.D. Ohio Jan. 10, 2022) (listing cases where courts found an insufficient nexus). Instead, courts have found a close nexus or joint action where a plaintiff shows that "the state 'played a role in the decision' made by the private actor that led to the deprivation of Plaintiffs' rights, either by showing, for example, that the contract necessitated the private actor's decision or that state actors were involved in the decision." *Id.* (finding plaintiff pled facts sufficient to show a close nexus between the State and the prison telephone provider so as to consider the provider a state actor where the prison allegedly directed the provider to seize private information from the inmates' Facebook accounts) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1336 (6th Cir. 1992)).

Here, Plaintiffs allege more than the mere existence of a contractual relationship between the Defendants and ICS: they contend that Messrs. Fewell, Cain, and Coddington were involved in the process of creating telephone accounts, collecting customers' information, and marking attorneys' accounts confidential. ECF No. 1 ¶¶ 18–20. Further, Plaintiffs allege that Washington County owns the recordings and controls when, and to whom, ICS may disseminate them. ECF No. 1 ¶ 26. The Complaint, however, falls short of alleging that Washington County directed or played a role in the challenged conduct—the decision to record the privileged calls. *See generally* ECF No. 1. Therefore, Plaintiffs have failed to show joint action or a close nexus between ICS and the State regarding the recording of attorney-client phone calls.

Accordingly, because Plaintiffs have not pled facts sufficient to show that ICS is a state actor,[6] ICS' Motion to Dismiss will be GRANTED IN PART and Counts II and III of the Complaint will be dismissed without prejudice. The Court, however, will permit Plaintiffs the opportunity to amend their complaint to attempt to plead facts sufficient to show that ICS is a state actor. *See Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) (explaining that courts should permit a curative amendment in the civil rights context unless such an amendment would be inequitable or futile).

### C. The Motion to Dismiss by Washington County and Messrs. Fewell, Cain, and Coddington Will be Granted (ECF No. 10)

In their Motion, Washington County and Messrs. Fewell, Cain, and Coddington seek to dismiss Counts IV and V of the Complaint, which assert § 1983 claims. ECF No. 10. Count IV asserts that Messrs. Fewell, Cain, and Coddington failed to intervene to stop the alleged First and Fourth Amendment violations. ECF No. 1 ¶¶ 51–53. Count V of the Complaint brings a *Monell* claim against Washington County. ECF No. 1 ¶¶ 54–57. The Court will address each count in turn below.

#### 1. Plaintiffs Have not Stated a Claim for Failure-to-Intervene Pursuant to 42 U.S.C. § 1983 (Count IV)

Courts have found that "both police and corrections officers must 'take reasonable steps to protect a victim from another officer's use of excessive force.'" *Weimer v. County of Fayette*, 972 F.3d 177, 191 (3d Cir. 2020). This duty to intervene, however, has not been extended beyond the excessive use-of-force context or the custody-sexual-assault context. *Id.*; *see also Thomas v. City of Harrisburg*, 88 F.4th 275, 285 (3d Cir. 2023) ("Though we have recognized a right to have a

---

[6] Because the Court has found that Plaintiffs have failed to plead facts showing that ICS is a state actor, it need not address whether Plaintiffs' First and Fourth Amendment rights were violated.

14

government actor intervene when the underlying constitutional violation involves excessive force or sexual assault of a person in custody or detention, we have since concluded that our precedent does not establish, let alone clearly establish, a right to intervention in other contexts.").

In their Motion to Dismiss, Messrs. Fewell, Cain, and Coddington assert that Plaintiffs have not stated a failure-to-intervene claim because such a claim is confined to the excessive use-of-force context. ECF No. 11 at 9–10. In response, Plaintiffs assert that they have stated a claim because a failure-to-intervene claim can be extended beyond the excessive use-of-force context to other violations of Fourth Amendment rights, and to First Amendment violations. ECF No. 12 at 8–11. The Court agrees that the Plaintiffs have failed to state a claim under § 1983 for the failure to intervene because the recording of attorney-client communications lies outside the excessive use-of-force context.

Even if Plaintiffs' failure-to-intervene claim was cognizable outside the excessive use-of-force context, which the Court does not find, Messrs. Fewell, Cain, and Coddington are entitled to qualified immunity because they did not violate a clearly established constitutional right. Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Phoenician Mediterranean Villa, LLC v. Swope*, 872 F.3d 138, 143 (3d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted)). At the motion-to-dismiss stage, government officials are entitled to qualified immunity unless (1) facts, taken in light most favorable to the plaintiff, show a constitutional violation, and (2) the constitutional right was clearly established at the time of the violation. *Thomas*, 88 F.4th at 281. Courts may address these two prongs in any order. *Lozano v. New Jersey*, 9 F.4th 239, 245 (3d Cir. 2021). Courts have interpreted "clearly established" to mean that officers "are on notice their conduct is unlawful" prior to bringing a lawsuit against them. *Thomas*, 88 F.4th at 283. A right is clearly established

where it "is sufficiently clear that a reasonable official would understand that what he is doing violates that [constitutional] right." *Id.* at 284. Although courts have found a clearly established duty to intervene in excessive force cases or custody sexual assault cases, they have not found a clearly established duty to intervene in other contexts. *Id.* at 285.

In their Motion, Messrs. Fewell, Cain, and Coddington contend that, regardless of whether there was a duty to intervene in this case, they are entitled to qualified immunity because they did not violate a clearly established right. ECF No. 11 at 11–12. In response, Plaintiffs aver that qualified immunity does not apply to these Defendants. ECF No. 12 at 11–14. Here, Plaintiffs' failure-to-intervene claim occurs in the context of recording attorney-client communications and does not involve the excessive use of force or a custodial sexual assault. Therefore, the Court finds that there is not a clearly established right to have officers intervene to prevent the recording of attorney-client communications, such that a reasonable officer would understand that his failure to stop the recording violates a constitutional right.

Accordingly, Messrs. Fewell, Cain, and Coddington are entitled to qualified immunity, and the Court will dismiss Count IV of the Complaint with prejudice and dismiss these individual defendants from the suit.

### 2. The *Monell* Claim Pursuant to 42 U.S.C. § 1983 Will be Dismissed (Count V)

"[A] municipality can be held liable [for constitutional violations] when the 'execution of a government's policy or custom. . . inflicts the injury.'" *Bhatnagar v. Meyer*, No. 22-2848, 2023 WL 5378834, at *3 (3d Cir. Aug. 22, 2023) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978)). To sufficiently state a *Monell* claim, a plaintiff must identify "the constitutional right at issue, identify the policy or custom at issue, identify the policymaker, demonstrate deliberate indifference or evidence of knowledge and acquiescence by the

policymaker[,] and demonstrate causation.'" *Long v. City of Phila.*, No. 15-00202, 2016 WL 192605, at *3 (E.D. Pa. Jan. 15, 2016) (quoting *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 342 (E.D. Pa. 2006)). *Monell* claims, therefore, are based on an underlying constitutional violation; and where a plaintiff has no such claims remaining before the court, the *Monell* claims must also fail. *Bhatnagar*, 2023 WL 5378834, at *3; *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986).

In its Motion, Washington County contends that, because Plaintiffs have failed to plead a violation of their First and Fourth Amendment rights, it cannot be held liable for allegedly implementing a custom or policy that violated these rights. ECF No. 11 at 13–14. In response, Plaintiffs allege that ICS did violate their constitutional rights, and did so pursuant to Washington County's custom and/or policy. ECF No. 12 at 14–15. Plaintiffs' *Monell* claim, however, fails because they have no remaining constitutional claims in the case, in light of the Court's finding that Plaintiffs failed to state a 1983 claim for First and Fourth Amendment violations. *See supra,* Section III.B.2.

Accordingly, the Motion to Dismiss will be GRANTED as to Count V and Count V of the Complaint will be DISMISSED without prejudice. The Court, however, will provide Plaintiffs with an opportunity to amend their complaint with respect to this claim.

## IV.  Conclusion

For the foregoing reasons, the Motion to Dismiss by ICS is hereby GRANTED IN PART and DENIED IN PART, and the Motion to Dismiss by Washington County and Messrs. Fewell, Cain, and Coddington is hereby GRANTED, as further set forth in the accompanying Order.

DATED this 7th day of March, 2024.

                                      BY THE COURT:

                                      <u>/s/ Christy Criswell Wiegand</u>
                                      CHRISTY CRISWELL WIEGAND
                                      United States District Judge

cc (via ECF email notification):

All Counsel of Record